**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 22-cv-0795-WJM-KAS

CHRISTINE PICARD,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S**
**PARTIAL MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's Partial Motion for Summary Judgment ("Motion").  (ECF No. 42.)  Plaintiff Christine Picard filed a response.  (ECF No. 44.)  Defendant filed a reply.  (ECF No. 53.)  For the following reasons, the Motion is granted.

**I. STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the nonmoving party. *Mares v. ConAgra Poultry Co.*, Inc., 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id*.; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. COLORADO LAW CONCERNING BAD FAITH INSURANCE CLAIMS

Colorado law provides for two types of bad faith claims arising out of an alleged breach of an insurance contract: (1) common law bad faith and (2) statutory bad faith. *Dowgiallo v. Allstate Ins. Co*., 2020 WL 1890668, at *2 (D. Colo. Apr. 16, 2020). The two claims are similar but nevertheless distinct. "[B]oth common law and statutory bad faith claims require a showing of unreasonable conduct." *McKinney v. State Farm Mut. Auto. Ins. Co*., 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021). A statutory bad faith

claim primarily concerns whether an insurer denied or delayed the payment of insurance benefits without a reasonable basis. *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018). To succeed on a claim of unreasonable delay or denial, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

In addition to an insurer's statutory duties, an insurer has a simultaneous common law duty to deal in good faith with its insured. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co*., 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co*., 68 P.3d 462, 466 (Colo. 2003)). "The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim." *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co*., 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020). In addition to demonstrating that the insurer delayed or denied the payment of benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id*. (quoting *Fisher v. State Farm Mut. Auto. Ins. Co*., 419 P.3d 985, 990 (Colo. App. 2015)).

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am. Family Ins. Grp*., 275 P.3d 750, 759 (Colo.

App. 2012); *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  But "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law."  *Id*.  "The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'" *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004)); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.").

### III. MATERIAL FACTS[1]

On December 9, 2018, Plaintiff was stopped at a red light when she was rear ended by tortfeasor Holmquist.  Holmquist was insured with State Farm, with bodily injury ("BI") limits of $100,000.  Defendant's Claim Specialist Jared Maestas adjusted Plaintiff's third party BI claim against Holmquist and Plaintiff's first party underinsured motorist ("UIM") claim against Defendant.  Defendant evaluated Plaintiff's damages in the third party BI claim as having a value of between $56,538.75 and $78,759.46.  According to Defendant, in recognition of the fact that it was obligated to protect its insureds from potential excess judgment, a claims decision was made to accept Plaintiff's BI policy limit demand of $100,000.  (ECF No. 42 at 3 ¶ 5.)  Plaintiff settled her claims against Holmquist for the BI limits of $100,000.

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Plaintiff pursued a UIM claim with Defendant, asserting her damages exceeded the $100,000 BI limit.  Defendant subsequently evaluated Plaintiff's damages in the UIM claim as having a value of between $64,713.87 and $87,213.87, which was less than the $100,000 BI limits Plaintiff had already recovered.  Plaintiff asserts that her medical expenses have increased by $25,000, as she continued actively treating after April 2020, when Defendant paid the BI settlement.  (ECF No. 44 at 2–3 ¶¶ 5, 8.)  Defendant admits that Plaintiff has received additional care after the accident but disputes whether or to what extent the care is reasonable, necessary, or related to the subject accident. (ECF No. 53 at 3 ¶ 1.)

Plaintiff states that Maestas "testified he made no attempt to obtain photographs of the drunk driver's . . . property damage to assist in his adjustment of either liability or UIM claim."  (ECF No. 44 at 5 ¶ 7 (citing ECF No. 44-15)[2].)  However, Defendant denies Plaintiff's assertion, stating that "Maestes testified that he did not recall whether he looked at the tortfeasor's property damage photos."  (ECF No. 53 at 4 ¶ 7 (citing ECF No. 44-15, Maestas Dep. 49:1-50:22).)  Further, Plaintiff asserts that Defendant "failed to factor the mechanism of crash, here—obtaining wrongdoer's damage photos, in April 2020 when [Defendant] demanded an IME despite the Auto Claims Manual, Exhibit 12, mandating this investigation to corroborate the 'mechanism' of injury."  (ECF No. 44 at 5–6 ¶ 8.)  Defendant disputes Plaintiff's assertion, relying on the Injury Evaluation, which Defendant states shows that it factored the mechanism of the rear end collision, Plaintiff's broken, seat, and photos of Plaintiff's vehicle were all considered.  (ECF No.

[2] Plaintiff cites no page or line numbers.  The Court cannot locate language in Exhibit 15 (ECF No. 44-15) corroborating Plaintiff's statement.

53 at 4 ¶ 8.)  Additionally, Defendant points out that "Maestas testified that he could not recall if he *also* looked at photos of the tortfeasor's vehicle" and that "the carrier guidelines do not contain such a 'mandate[.]'"  (*Id.* (citing ECF No. 44-15 at 49:1–50:17).)

The parties agree that a records review was not done in April 2020.  An independent medical examination ("IME") was requested because Plaintiff was still actively treating.  Defendant states that it could not proceed with the IME in April 2020 because it needed additional records.  (ECF No. 53 at 5 ¶ 12 (citing ECF No. 44-7).)  On September 18, 2020, Dr. David Reinhard, an expert retained by Plaintiff, conducted an IME.  Dr. Reinhard opined that Plaintiff required additional medical care.  Defendant obtained a copy of Dr. Reinhard's IME for its adjustment of Plaintiff's UIM benefits and on September 28, 2020, Defendant stated that it would proceed with an IME with a neurologist.  That day, Defendant sent records to an IME vendor, PRIZM, to begin scheduling the IME.  Defendant states that it took time to determine how to accomplish the IME given Plaintiff's residency in Grand Junction, the absence of a qualified expert in that area, and the COVID-19 pandemic.  (ECF No. 53 at 6 ¶ 17 (citing ECF No. 53-1 at 7).)

By December 9, 2020, Plaintiff agreed to undergo an IME on February 3, 2021 with Dr. Erick Hammerberg.  On January 29, 2021, Plaintiff sent Defendant updated medical records and billing including Dr. Reinhard's recommended treatment.  Plaintiff obtained a copy of Dr. Hammerberg's report.

On March 30, 2021, Defendant sent Plaintiff a letter stating that

> We have finished our evaluation of your client's claim, inclusive of the recent Independent Medical Exam (IME) of

> your client.  A copy of that IME report has been sent your
> office, previously.
>
> Based on our review of all information received to date, it
> appears your client has been fully compensated from the
> underlying settlement.
>
> We regret to advise your office more favorably, but do
> remain open to any new information to consider.

(ECF No. 44-26.)  Plaintiff characterizes this letter as a denial of UIM benefits, while State Farm states it was not a denial because Defendant agreed to consider additional information.

On July 8, 2021, Plaintiff sent Defendant additional medical records.  On July 13, 2021, Defendant reiterated its position that Plaintiff had been fully compensated already but also indicated it would be open to interviewing Plaintiff, asked whether there was any outstanding information that it did not already have, and stated it was open to new information to consider.  (ECF No. 44-29.)

On August 6, 2021, Plaintiff notified Defendant that Dr. Hammerberg's report failed to state that he reviewed Dr. Reinhard's IME.  On August 20, 2021, Maestas sent a letter to Plaintiff claiming Dr. Hammerberg had reviewed Dr. Reinhard's report, when he had not, and that Defendant's position had not changed.  (ECF No. 44-31.)  On September 8, 2021, Plaintiff sent a letter to Defendant showing that Dr. Hammerberg's report did not include or mention Dr. Reinhard's report and updated Defendant on Plaintiff's ongoing medical treatment.  (ECF No. 44-32.)  On September 14, 2021, Defendant sent a letter stating it would send Dr. Reinhard's report to Dr. Hammerberg to review.  (ECF No. 44-33.)

Plaintiff states that Maestas's failure to provide Dr. Reinhard's report to Dr.

Hammerberg "violated State Farm's Auto Claim's Manual's 'Required Documentation for Transmittal to Reviewer.'"  (ECF No. 44 at 9 ¶ 29 (citing ECF No. 44-34).) Defendant explains that while Maestas was out of the office, Claims Specialist Kerns assisted him, and an oversight occurred, resulting in Dr. Reinhard's report not being attached to the IME vendor's materials.  (ECF No. 53 at 7 ¶¶ 29–31.)  Once the oversight was discovered, the report was sent.  (*Id.*)  Defendant's corporate designee testified that the Auto Claims manual mandates that all information be sent to a medical reviewer and that Dr. Hammerberg did not have Dr. Reinhard's IME report when Dr. Hammerberg issued his report.

## IV. ANALYSIS

### A.   Whether Allowing the Same Claim Specialist to Handle BI and UIM Claims Violates Industry Standards

Defendant argues that its decision to have Maestas handle the BI and UIM claims in this case did not violate insurance industry standards.  (ECF No. 42 at 6–9.)  It explains that in a third party BI claim, an insurer owes a quasi-fiduciary duty to its third party insured—the alleged tortfeasor—because the insurer retains control over the defense and settlement for the insured.  (*Id.* at 6 (citing *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984)).)  By contrast, in a first party claim, like a UIM claim, the insurer does not owe a fiduciary duty to its insured because "the insured has *not* ceded any right to represent his interests to the insurer".  (*Id.* at 7 (citing *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 152 (Colo. 2007) (emphasis in original, internal citations omitted)).)  In such a case, the insurer becomes adversarial to its own insured. (*Id.* (citing *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 ¶ 28 (Colo. 2012)).)

Applying these principles, Defendant explains that its role in this case is "basically adversarial" to Plaintiff whether she seeks third party BI benefits or first party UIM benefits. "Because that role is the same, no matter which benefits plaintiff is seeking (BI or UIM) there can be no 'conflict of interest' for State Farm to have the same person handle both the first and the third party claims." (*Id.* at 9.)

In her response, Plaintiff provides no case law or other legal authority supporting her position that a conflict of interest exists under these circumstances that would substantiate her bad faith claims. (ECF No. 44.)  Her only support for this argument rests with her insurance industry standards expert, David Blattenberg.  In his initial report, Mr. Blattenberg states that the fact that Defendant chose to have the same adjuster handle the underlying bodily injury liability claim on behalf of the at-fault driver and Plaintiff's UIM claim is "very relevant to [his] opinion."  (ECF No. 43-3 at 7.)  In relevant part, Mr. Blattenberg states:

> In my experience, insurance carriers typically 'split' the handling of each case to separate adjusters to avoid any appearance of a potential conflict of interest.  During their claim investigation an adjuster often finds information about their policyholder which either helps or hurts their case.  I find it interesting, and troublesome, that State Farm didn't 'split' the handling in the Picard matter.  That is something relatively easy for a carrier to do.  They claim that they don't see any conflict of interest, but have since changed their handling and organizational structure (Bierbaum depo page 73, line 14-15).
>
> . . .
>
> Then, once that underlying BI claim was completed via settlement and release, he became the adjuster for Ms. Picard in her UIM claim.  (Deposition Exhibit 4, dated January 10, 2020, and again on February 7, 2020). But . . . he's really never the adjuster "for" Ms. Picard – he's representing the at-fault DUI driver Holmquist in the first

claim, an adversarial role against Ms. Picard, and he's
representing State Farm in the second UIM claim against
Ms. Picard.

(ECF No. 43-3 at 7–9.)  As his report demonstrates, Mr. Blattenberg offers no basis for

an opinion that employing the same claims adjuster for the BI and UIM claims violates

an industry standard.  In fact, Mr. Blattenberg never explicitly says such a standard

exists or, if it does, that it was violated.  He merely expresses an opinion that it is

"interesting" and "troublesome" that Defendant did not "split" the handling of the BI and

UIM claims.

A trial court has considerable discretion in determining whether particular expert

testimony is reliable.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

"Under Rule 702, admissible expert testimony must be based on actual knowledge and

not 'subjective belief or unsupported speculation."  *Estes Park Taffy Co., LLC v. Original*

*Taffy Shop, Inc.*, 2017 WL 2472149, at *2 (D. Colo. June 8, 2017) (citing *Mitchell v.*

*Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999) (internal quotation marks omitted)).

Ultimately, the proponent of expert testimony has the burden of establishing the

admissibility of the expert's opinions under Rule 702.  *In re Breast Implant Litig.*, 11 F.

Supp. 2d 1217, 1222 (D. Colo. 1998).

Plaintiff made no effort in either her response to the instant Motion or to

Defendant's motion to exclude Mr. Blattenberg's testimony on this point to refute

Defendant's argument that Mr. Blattenberg's opinion on this matter is not admissible.

(ECF Nos. 44, 59.)  Under these circumstances, the Court cannot find that Mr.

Blattenberg's opinion is admissible expert testimony, even with the liberal standard set

forth by Rule 702.  Accordingly, the Court grants this portion of the Motion and

concludes that the fact that Mr. Maestas handled the BI and UIM claims cannot support Plaintiff's unreasonable statutory delay or common law bad faith claims.

**B.      Whether Defendant's Payment of BI Limit Constitutes an Admission that Defendant knew the UIM Limit Exceeded the BI Limit**

Defendant argues that the settlement of Plaintiff's BI claim is not an admission regarding Plaintiff's damages value in the UIM case.  (ECF No. 42 at 9.)  Plaintiff does not address this argument in her response.  (ECF No. 44.)  In its reply, Defendant points out that Plaintiff's response "appears to abandon the theory that compromise offers or settlements constitute an admission as to the value of personal injury damages, and in any event it offers no authority to support such a theory."  (ECF No. 53 at 8.)

The Tenth Circuit has found that "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.'"  *Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)).  Given Plaintiff's failure to address this argument, the Court concludes that she has forfeited the point.  Accordingly, the Court grants this portion of the Motion and concludes that the fact that Defendant paid Plaintiff the limits of the tortfeasor's BI policy cannot support Plaintiff's unreasonable statutory delay or common law bad faith claims.

**C.      Whether There Is Sufficient Evidence to Support the Bad Faith Claims[3]**

In response to Defendant's argument that the Court should grant it summary

---

[3] The Court separated this section of its Order into separate statutory and common law bad faith portions based on the apparent organization of these claims in Plaintiff's response brief.  (ECF No. 44.)  She appears to first argue her statutory claim on page 11, with the support the Court identifies in Part IV.C.1, and argues her common law claim on page 12, as shown by her statement: "Next, for an insured to prevail on a common law bad faith claim . . . ."  (ECF No.

judgment with respect to both of Plaintiff's bad faith claims, Plaintiff argues that a reasonable jury "could find that State Farm's investigation was unreasonable because the plaintiff provided documentation to show her claimed damages, which State Farm apparently did not consider and therefore did not reasonably investigate the plaintiff's claim before rendering its coverage decision."  (ECF No. 44 at 11.)  For the following reasons, the Court finds that Plaintiff has failed to meet her burden to demonstrate that a genuine issue of material fact exists with respect to her bad faith claims.

    1.   <u>Statutory Unreasonable Delay/Denial Claim</u>

To support her statutory bad faith claim, Plaintiff argues that she "provided substantial support for her UIM claim" and cites numerous pieces of evidence without analysis.  (ECF No. 44 at 11 (citing exhibits).)  In a conclusory manner, she states that based on evidence purportedly showing that "her doctors found she sustained a concussion, excused her from college, and [she] incurred lost income for eight months," a "reasonable jury can find that State Farm's adjustment was unreasonable and unreasonably delayed paying [Plaintiff] UIM benefits."  (*Id.*)  She then states, "[t]herefore, a reasonable jury can find State Farm violated C.R.S. § 10-3-1115 and 1116."  (*Id.*)

Plaintiff is correct that an insurer must "promptly and effectively communicate with anyone it was reasonably aware had . . . information pertaining to the handling of [a

---

44 at 11–12.)

    However, at some times in her brief, it appears as though she relies on all of the same evidence and arguments to support both claims; her brief is not a model of clarity.  Therefore, to the extent any question remains and no matter how the Order is organized, the Court concludes that none of the evidence or arguments that Plaintiff raises in her response are sufficient to withstand the Motion.

plaintiff's] claim." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 891 (10th Cir. 2016) (quoting *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010)).[4] However, although Plaintiff argues that Defendant's investigation of her claim was inadequate, she has not identified what further investigation could or would have uncovered. "Insurers do not act unreasonably in failing to pursue investigation of claims that would not yield information that would change their coverage determinations." *Townsend v. Nw. Mut. Life Ins. Co.*, 2022 WL 602869, at *16 (D. Colo. Feb. 28, 2022), *appeal dismissed*, 2022 WL 4016906 (10th Cir. Apr. 28, 2022) (citing *Sims v. Great Am. Life Ins. Co*, 469 F.3d 870, 891–93 (10th Cir. 2006)).

The list of evidence she cites does not explain how Defendant failed to investigate or what evidence it would have uncovered with further investigation; it merely underscores that the parties dispute the cause of her purported injuries and whether she is owed UIM benefits. Rather, as Defendant emphasizes, Plaintiff has "identified no unresolved facts in [her] case" or "come forward with any facts that State Farm should have discovered in its investigation but which were not discovered because State Farm did not do an adequate investigation." (ECF No. 53 at 9 (emphasis in original).) Based on the foregoing, the Court agrees and concludes Plaintiff has not shown that a reasonable jury could find that Defendant acted without a reasonable

---

[4] Plaintiff relies on *Penden* to support her arguments, but the Court finds *Penden* distinguishable. In *Penden*, the Tenth Circuit concluded that in investigating the plaintiff's coverage demand, the insurer could have but did not consult with a physician, ask the plaintiff to submit to a physical examination, or interviewed her. *Peden*, 841 F.3d at 893. Here, Defendant obtained Plaintiff's medical records, conducted an IME, and interviewed Plaintiff. (ECF No. 53 at 9.) Additionally, in *Penden*, the court found that in connection with a negligence apportionment dispute, Defendant should have investigated whether the plaintiff knew a tortfeasor would drive when she got into his vehicle and whether she knew the tortfeasor was drunk. Plaintiff has not identified such unresolved facts in her case. Accordingly, Plaintiff's reliance on *Penden* does not save her claims.

basis on Plaintiff's claim for benefits.

      2.   <u>Common Law Bad Faith Claim</u>

Plaintiff relies on two purported violations of Defendant's Auto Claims Manual to support her common law bad faith claim.  First, Plaintiff argues that "Maestas testified he did not follow the claims manual when investigating Ms. Picard's treating physicians['] diagnosis of traumatic brain injury."  (ECF No. 44 at 12 (citing Exhibits 12–16).)  She offers no further argument or citations to evidence for support.

Nevertheless, the Court finds that she has failed to demonstrate that Defendant had knowledge of or reckless disregard for the fact that its conduct—Maestas having to obtain photos of the tortfeasor's vehicle when investigating her claim—was unreasonable.  Plaintiff has not pointed to a requirement in Defendant's Claims Manual that Defendant obtain photos of the tortfeasor's vehicle.  Rather, in her Statement of Additional Disputed Facts (which the Court points out is not part of her Argument section), she states that the rearend impact broke her driver's seat but notes that Maestas "testified he made no attempt to obtain photographs of the drunk driver's (his insured's vehicle) property damage to assist in his adjustment of either liability or UIM claim."  (ECF No. 44 at 5 ¶ 7.)  Plaintiff misrepresents Maestas's deposition testimony.  Rather than testifying that he made no attempt to obtain photos of the tortfeasor's vehicle, he testified that he was sure he considered the photos but could not recall them without seeing them again.  He testified:

> Q: Do you know if you reviewed any photographs of the crash damage in your adjustment of this claim?
>
> A: I – I'm sure I did, but as I sit here, again, I don't recall the photos without seeing them again.

(ECF No. 44-15 at 1.)  Critically, as Defendant highlights, Plaintiff has not presented

evidence demonstrating that photos of the tortfeasor's vehicle would have changed the outcome of the investigation.  (ECF No. 53 at 10.)  Defendant never disputed the "mechanism" for injury—a rearend collision with sufficient force to break Plaintiff's seat or that Plaintiff was injured.  (*Id.*)  Accordingly, the Court concludes Plaintiff has not demonstrated that Maestas's inability to recall the photos of the tortfeasor's vehicle is a violation of the Claims Manual, much less evidence of her statutory claim sufficient to withstand the Motion.

Next, Plaintiff argues that Maestas and Defendant's corporate designee "agree that Dr. Reinhard's September 18, 2020 IME report should have been sent to Dr. Hammerberg before Dr. Hammerberg generated his February 3, 2021 IME review as required by the ACM."  (ECF No. 44 at 12.)  This argument also fails.  Defendant points out that the Claims Manual does not require that the report be provided "first."  (ECF No. 53 at 10.)  More importantly, Defendant clarifies that the timing of Dr. Hammerberg finally receiving Dr. Reinhard's report did not have an impact on the case.  As Defendant states, it is undisputed that Dr. Hammerberg received Dr. Reinhard's report and issued a supplement.  (*Id.*)  Although Defendant concedes that there was "an oversight on timing, that oversight did not cause any delay in the payment of benefits owed," and therefore "cannot be the basis for a statutory unreasonable delay claim." (*Id.*)  Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there is simply no evidence such that a reasonable jury could find that Defendant's oversight in sending Dr. Reinhard's report to Dr. Hammerberg was done with knowledge or reckless disregard that such conduct was unreasonable.  On this record the Court concludes that neither of these two purported violations of the Claims Manual are

sufficient to overcome the Motion.

> 3.    The Dispute Over Causation and Claim Value

"Unreasonable conduct cannot be established by virtue of a mere disagreement of value between the insured and insurer." *Yale Condos. Homeowner's Ass'n, Inc. v. Am. Fam. Mut. Ins. Co., S.I.*, 2021 WL 1222518, at *7 (D. Colo. Apr. 1, 2021).  The Court concludes that although Plaintiff raises some issues, they are attorney arguments, not evidence of bad faith.  Plaintiff has not identified evidence that Defendant did not review or evaluate.  She has also failed to demonstrate that Defendant knew or recklessly disregarded the validity of her claim.  She merely disagrees with the evaluation, which is insufficient to create a triable bad faith claim.  *The Green Earth Wellness Center v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016) ("were the Court to hold that a mere disagreement between parties as to the valuation of a claim created a triable bad faith claim, essentially *every* insurance dispute would proceed to trial on such a claim, as disputes between the insurer and insured over the proper valuation of the loss are routine").

Accordingly, the Court grants summary judgment in favor of Defendant and against Plaintiff on both of Plaintiff's bad faith claims.

## V. CONCLUSION

Accordingly, for the reasons stated, the Court ORDERS as follows:

1.    Defendant's Partial Motion for Summary Judgment (ECF No. 42) is GRANTED as set forth above;

2.    At such time as the Clerk enters final judgment in this action, the Clerk shall enter judgment in favor of Defendant and against Plaintiff on Plaintiff's claims for statutory unreasonable delay/denial and common law bad faith; and

3.      This case remains SET for a Final Trial Preparation Conference on October 18,

2024 and a five-day jury trial to begin on November 4, 2024 (ECF No. 70).

Dated this 10th day of June, 2024.

                                        BY THE COURT:

                                        _____
                                        William J. Martínez
                                        Senior United States District Judge