IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0795-WJM-KAS

CHRISTINE PICARD,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

**ORDER RULING ON DEFENDANT'S
FEDERAL RULE OF EVIDENCE 702 MOTIONS**

---

Before the Court are two Federal Rule of Evidence 702 motions filed by Defendant State Farm Mutual Automobile Insurance Company: (1) Defendant's Motion to Strike Plaintiff's Expert Blattenberg ("Blattenberg Motion") (ECF No. 51); and (2) Defendant's F.R.E. 702 Motion to Strike or Limit Opinions of Plaintiff [Christine Picard]'s Experts Shayam [*sic*], Pramenko[,] and Talaber ("Second 702 Motion") (ECF No. 52). Both motions are ripe. (ECF Nos. 59, 60, 61, 63.)

Neither party requested an evidentiary hearing on the motions, and the Court finds it does not need one to resolve them. For the following reasons, the Blattenberg Motion is granted in part and denied in part, and the Second 702 Motion is also granted in part and denied in part.

**I. LEGAL STANDARDS**

A district court must act as a "gatekeeper" in admitting or excluding expert

testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert opinion testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (as amended on Dec. 1, 2023). They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Id.* The proponent of expert testimony has the burden to show that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 402 provides that relevant evidence is admissible unless any of the following provides otherwise, including the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Further, Rule 402 provides that irrelevant evidence is not admissible.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II. ANALYSIS[1]

### A.  Blattenberg Motion

Plaintiff retained David Blattenberg as her expert witness to offer an opinion about Defendant's handling of her underinsured motorist claim ("UIM") claim, including the overall handling of the claim, the evaluation, the investigation, the denial, and any breaches of the implied covenant of good faith and fair dealing or Colorado statutes. (ECF No. 59 at 2.)  Further, he has been endorsed to testify about insurance industry standards generally.  (ECF No. 51 at 3.)

#### 1.   Preclude Testimony

To prove her bad faith claims, Plaintiff must show, *inter alia*, that Defendant "acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim."  *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985).  "Whether an insurer has acted reasonably in denying or delaying approval of a claim will be determined on an objective basis, requiring proof of the standards of conduct in the industry."  *Id*. at 1275.  Mr. Blattenberg purports to provide expert opinion regarding how Defendant's handling of Plaintiff's claim compared to these industry standards.

Defendant moves to exclude Mr. Blattenberg from testifying, claiming he is unqualified to offer expert opinions on insurance industry standards.  Defendant explains that Mr. Blattenberg worked for Allstate Insurance Company from 1983–2017

---

[1] Both parties repeatedly spell the experts' names wrong—even their own experts' names.  For example, Defendant refers to "Dr. Thigiaresh, MD" (ECF No. 52 at 7), but the Court cannot locate such an individual and believes the correct name is Dr. Thiagarajah.  Plaintiff refers to "Ms. Shamya" and "Ramaya Shyam" (ECF No. 60 at 6), but in her expert report, her name is spelled "Ramya Shyam, M.S., CCC-SLP."  (ECF No. 52-2 at 6.)  The Court expects counsel's attention to detail to improve immediately and dramatically.

3

in several roles, including claim representative, paralegal, and claims senior manager. (ECF No. 51 at 3.)  Despite this experience, Defendant argues that Mr. Blattenberg lacks the "meaningful threshold of expertise" that qualified experts have to opine about general, insurance industry standards because he has only worked at one insurance company.  (*Id.*)  For instance, Defendant takes issue with Mr. Blattenberg's inability to cite case law, Division of Insurance ("DOI") regulations, statutes, written carrier procedures, or guidelines stating a carrier must "give the benefit of the doubt" to its insured.  (*Id.* at 6.)  Defendant argues that Mr. Blattenberg's inaccurate understanding of applicable law and standards requires a finding that his opinions do not satisfy the reliability prong of Rule 702.

At least one other judge in the District of Colorado considered a nearly identical argument concerning Mr. Blattenberg in *Doherty v. Nationwide Agribusiness Insurance Company*, Case No. 1:22-cv-1451-REB-SKC, ECF No. 61, "Order Re: Nationwide Agribusiness Insurance Company's Motion to Exclude Expert Testimony of David W. Blattenberg Pursuant To Fed. R. Evid. 702."  In *Doherty*, Senior United States District Judge Robert E. Blackburn concluded that Mr. Blattenberg should not be disqualified as an insurance industry standards expert merely because he only worked at one insurance company and primarily relied on his experience.  In fact, he found the argument "laughable."  Instead, Judge Blackburn explained that

> [t]here is no requirement that an expert must woodenly preface any statement of his opinion with a reminder that it is based on his experience with and knowledge of industry standards.  Here again, cross-examination or competing evidence is the appropriate vehicle to explore any perceived lack of correspondence between Mr. Blattenberg's testimony and industry standards.  I thus find and conclude Mr. Blattenberg ostensibly qualified to offer expert opinion on the

4

> topics as to which he has been endorsed, and the motion will
> be denied as to that issue.

*Doherty*, ECF No. 61 at 6.

The Court agrees with the reasoning in *Doherty* and similarly denies this portion of the Blattenberg Motion. However, as explained below, the Court agrees with Defendant that some of Mr. Blattenberg's opinions should be precluded.

    2.    <u>Preclude Certain Opinions</u>

Defendant requests that the Court preclude Mr. Blattenberg from offering certain opinions. (ECF No. 51 at 9–10.) Plaintiff's response to this request in its entirety is:

> Courts have found Fed. R. Evid. 702, as discussed above, have [*sic*] allowed experts to testify on each of the specific objections, numbered 1-10, that Defendant claims. Def. Mot. At [*sic*] 9-10. Nonetheless, if Court finds that any of Mr. Blattenbergs [*sic*] opinions constitute inadmissible conclusion, then Plaintiffs asks for leave so Mr. Blattenberg can supplement his report to address each of the ten (10) objections Defendant asserts.

(ECF No. 59 at 10.) In its reply, Defendant points out that "plaintiff's Response, Dkt. 59, p. 10, otherwise does not substantively address the issues raised in the Motion. [The response] states only that unidentified courts have allowed experts to opine in the areas objected to by defendant. No citation for this assertion is set forth, and defendant is not aware of the cases plaintiff relies on for the assertion." (ECF No. 59 at 3–4.)

The Court finds Plaintiff's cursory response unhelpful and, due to its failure to substantively address Defendant's objections, tantamount to a concession of the arguments. *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived). The Court denies Plaintiff's request for leave for Blattenberg to supplement Defendant's challenged opinions. (ECF No. 59 at 2.) Plaintiff made no effort to respond to

5

Defendant's objections to Mr. Blattenberg's opinions in her response, and therefore, the Court finds she has waived further argument on the issue.

Nevertheless, the Court reviewed each of the opinions that Defendant requests be precluded and rules as follows.

**Opinions Inconsistent with Colorado Law**

Defendant argues that the following opinions are inconsistent with Colorado law. (ECF No. 51 at 9.)

> a.   "A carrier must give equal consideration to the interests of their insured as to their own." Id. p. 7.  This conflicts with Zolman, 261 P.3d at 501.

Defendant argues that Mr. Blattenberg's opinion conflicts with Colorado law. (ECF No. 51 at 7, 9.)  The Court agrees.  Colorado law provides that "the 'equal consideration' standard only applies in third-party bad faith cases, not first-party cases." *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 501 (Colo. App. 2011) (citing *Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161, 169 (Colo. App. 2003)).

In her response, Plaintiff does not address Defendant's argument.  (ECF No. 59.) And Mr. Blattenberg provides no authority for his statement in his expert report.  (ECF No. 51-3.)  Accordingly, the Court grants this portion of the Blattenberg Motion and precludes Mr. Blattenberg from offering this opinion at trial.

> b.   "[C]arriers must give the benefit of the doubt to their insured." Id. There is no support for this *ipsie dixit assertion of the expert.* Nacchio, 555 F.3d at 1258 (*ipsie dixit assertions are not admissible.*)

Defendant argues that Mr. Blattenberg offers no support for this opinion.  (ECF No. 51 at 9.)  The Court agrees.  In her response, Plaintiff does not address Defendant's argument.  (ECF No. 59.)  And Mr. Blattenberg provides no authority for his

6

statement in his expert report.  (ECF No. 51-3.)  Accordingly, the Court grants this portion of the Blattenberg Motion and precludes Mr. Blattenberg from offering this opinion at trial.

> c. *It is impermissible for carriers to have the same person adjust the plaintiff's third party and first party claims.  Ex. C, Initial Report, pp. 7-8).  No authority is cited for this in the report or deposition, and it is merely an* ipse dixit *assertion based on an inaccurate understanding of when a plaintiff and carrier are adversarial and when fiduciary duties do and do not exist.  See* authorities cited in PMSJ pp. 6-8 filed contemporaneously herewith.

The Court addressed this argument in its Order Granting Defendant's Motion for Partial Summary Judgment and incorporates its analysis by reference.  (ECF No. 73.) Based on the forementioned analysis, the Court grants this portion of the Blattenberg Motion and excludes Mr. Blattenberg's opinion that it is a conflict of interest for the same person to adjust a plaintiff's third party and first party claims.

> d. *Mr. Blattenberg opines State Farm delayed and denied the claim (Ex. C, Initial Report, p. 15) apparently because he was under the impression that carriers have 30 days to take action on a claim. Ex. B, 83:24-84:25. This conflicts with DOI regulations requiring insurers to evaluate and pay benefits due under a policy within 60 days after the receipt of a valid claim, unless there is a dispute between the parties. 3 CCR 702-5:5-1-14, §4 A. 1. a.*

Defendant argues that Mr. Blattenberg's opinion is inadmissible, as it conflicts with DOI regulations providing:

> All insurers authorized to write property and casualty insurance policies in Colorado, shall make a decision on claims and/or pay benefits due under the policy within *sixty (60) days* after receipt of a valid and complete claim unless there is a reasonable dispute between the parties concerning such claim, and provided the insured has complied with the terms and conditions of the policy of insurance.

3 Colo. Code Regs. § 702-5:5-1-14, § 4(A)(1) (emphasis added).  In his deposition, Mr.

7

Blattenberg testified as follows:

> Q. What is the industry standard setting the number of days for something to happen in Colorado, for a carrier to do something?
>
> A. For, like, are you talking about a 30-day response, or?
>
> Q. Sure.
>
> A. Yeah, 30 days is typically. There are other time periods, as I recall. I don't have them in front of me. But I think 30 days is a standard.
>
> Q. Where do you get that?
>
> A. Those came from, I think, Division of Insurance regulations. There are other time periods that are involved in providing different acknowledgements and responses and status letters. I think it was a 30-day response that was required typically on these investigations.
>
> Q. And what kind of case?
>
> A. I don't know if there's a distinction on—on other cases.
>
> Q. Do you know what the insurance regulation is that you're referring to?
>
> A. I don't have it off the top of my head, no.
>
> Q. Do you think that there's a 30-day limit imposed by an insurance regulation that applies to first-party UIM claims?
>
> A. As I recall, yes. I don't have that, again, on the top of my head.

(ECF No. 51-2 at 22.)

The Court grants this portion of the Blattenberg Motion in part and denies it in part. The motion is denied to the extent that Mr. Blattenberg may testify that Defendant

denied the claim. However, given the contradiction between the DOI provision and Mr. Blattenberg's deposition testimony, the Court grants that portion of the motion requesting that the Court preclude Mr. Blattenberg from testifying that Defendant delayed acting on Plaintiff's claim to the extent that opinion depends on the 30-day limit specified in his deposition testimony.

> e. *Mr. Blattenberg takes the position that a carrier cannot rely on records provided by counsel but must get its own medical records utilizing releases. Ex. D, Rebuttal Report, p. 3; Ex. B, 85:21-86:4. There is no authority cited for this position and defendant is aware of none.*

The Court agrees that Mr. Blattenberg fails to provide support for this statement. Therefore, the Court grants this portion of the Blattenberg Motion and precludes this testimony.

**Opinions Lacking Foundation**

Defendant argues that the following opinions lack foundation. (ECF No. 51 at 10.)

> f. *"State Farm knew that the risk of an excess verdict against . . . Holmquist, was likely." Ex. C, Initial Report, p. 7.*

Mr. Blattenberg has no way of knowing what Defendant knew with respect to a verdict in the case against Holmquist. Therefore, the Court finds that this opinion lacks a foundation and grants this portion of the Blattenberg Motion.

> g. *"[A] jury would likely find that the other driver is responsible for all of Ms. Picard's complaints, injuries and damages." Ex. C, Initial Report, p. 7.*

Mr. Blattenberg has no basis for his opinion concerning what a jury might find, other than a general, unsupported statement in which he says: "Based on the circumstance of the accident—the clear and aggravated liability—I feel that a jury would

9

likely find that the other drive is responsible for all of Ms. Picard's complaints, injuries, and damages."  (ECF No. 51-3 at 7.)  Therefore, the Court finds that this opinion lacks a foundation and grants this portion of the Blattenberg Motion.

> h. *"[J]uries return very large verdicts in cases involving drunk drivers." Ex. C, Initial Report, p. 9.*

Mr. Blattenberg provides no basis for this statement, which reads in full: "It is well-known that juries return very large verdicts in cases involving drunk drivers."  (ECF No. 51-3 at 9.)  Therefore, the Court finds that this opinion lacks a foundation and grants this portion of the Blattenberg Motion.

> i. *"[I]t's not uncommon for a good plaintiff attorney to not seek relief for punitive damages because they know that they're not covered." Ex. C, Initial Report, p. 10.*

Mr. Blattenberg provides no basis for this statement.  Therefore, the Court finds that this opinion lacks a foundation and grants this portion of the Blattenberg Motion.

> j. *"[I]t is well known that first party claim values are . . . typically higher than third party claim values". Ex. C, Initial report, p. 10.  In his deposition he admitted he does not know if this is true for any other carrier and he has done no investigation to see if this is the case. Ex. B, Depo., 64:13-66:6.*

Mr. Blattenberg provides no basis for this statement.  In his deposition testimony, he states that he has "never really felt the need to -- to verify that independently.  It's something that I think most would testify the same way, and that I would be very surprised if they didn't.  It's something we knew, we lived it, and it was not anything that we -- we -- we fought."  (ECF No. 51-2 at 17–18.)  Given this testimony, the Court finds that this statement lacks foundation and is not reliable expert testimony. Therefore, the Court grants this portion of the Blattenberg Motion.

> k. *At pp. 14-15, Mr. Blattenberg sets forth his own view of Ms. Picard's damage value.  He takes this view based on an incomplete*

> *review of the materials available to State Farm, because he testified he did not review all the medical records of Ms. Picard or all the expert reports. Ex. B, 33:5-34:10. Moreover, he takes into account expense exposure when he admits he has no data to support his assumption that carriers should take into account expense exposure. Ex. B, 74:21-75:22.*

While the Court considers this a close call, it denies this portion of the Blattenberg Motion and concludes that this argument goes to its weight, not its admissibility.

**B.   Second 702 Motion**

   1.   Dr. Alexandra Talaber

Plaintiff retained Dr. Talaber, a double board-certified neuro-optometrist, as an expert witness "to produce a report based on [her] review of records of the Claimant, Christine Picard." (ECF No. 52-1.) Defendant challenges Dr. Talaber on two grounds: first, her rebuttal report is not truly rebuttal and instead offers new opinions, and second, as a neuro-optometrist, she is not qualified to rebut the opinions of a neuro-ophthalmologist.

   a.   *Timeliness*

Defendant argues that Dr. Talaber offers numerous new, affirmative opinions throughout her report, which the Court does not reiterate in full here. (*See* ECF No. 52 at 4.) According to Defendant, all of these are new, affirmative opinions that should have been disclosed by Plaintiff's initial expert deadline so that Defendant's neuro-ophthalmologist expert, Dr. Thiagarajah, could have addressed them. (*Id.*) Further, Defendant asserts that Dr. Talaber's "other not-new opinions" are cumulative of Plaintiff's vision doctors: Drs. Reddin, McKenzie, and Reeder, and neuropsychologist, Dr. Young. (*Id.*)

In response, Plaintiff argues that some of Dr. Talaber's opinions are direct refutations of the testing methods and findings of Dr. Thiagarajah. Plaintiff addresses certain opinions, such as those related to her phoria breakdown, presbyopia, and dry eyes; Dr. Thiagarajah's testing; and age-related vision issues. (ECF No. 60 at 4–5.) She describes the "crux of Dr. Talaber's report" as a rebuttal of Dr. Thiagarajah's methods, testing, and opinion and argues it should be admitted.

In its reply, Defendant lists certain opinions to which it objected as new, affirmative opinions but Plaintiff did not address in her response, including: attributing "distance phoria" to the subject accident; because Plaintiff has a brain injury, "it is commonly understood" that she also has a delayed blink reflex; and treatment to date was "insufficient" and Plaintiff needs a "full program of neuro optometric rehabilitation" by a "licensed neuro-optometrist" and endorses a list of additional treatments the Plaintiff purportedly needs. (ECF No. 63 at 1–2.) However, Defendant concedes that Plaintiff argues many of Dr. Talaber's opinions are direct refutations of Dr. Thiagarajah's testing and findings. (*Id.* at 2.) Accordingly, Defendant states that the admissibility of Dr. Talaber's opinions "may have to be dealt with at trial, after Dr. Thiagaraja[h] testifies." (*Id.*) Defendant reiterates that nevertheless, Dr. Talaber's opinions are cumulative of Plaintiff's vision doctors. (*Id.* at 3.)

The Court grants in part and denies in part this portion of the Second 702 Motion. The motion is granted to the extent Dr. Talaber is precluded from offering opinions regarding: attributing "distance phoria" to the subject accident; because Plaintiff has a brain injury, "it is commonly understood" that she also has a delayed blink reflex; and treatment to date was "insufficient" and plaintiff needs a "full program of neuro

optometric rehabilitation" by a "licensed neuro-optometrist" and endorses a list of additional treatments the plaintiff purportedly needs.

However, as a rebuttal witness, Dr. Talaber cannot testify unless and until the testimony she was designated to rebut is given at trial; therefore, the Court concludes that the remainder of Dr. Talaber's testimony must be addressed at trial, after Dr. Thiagarajah testifies.  Accordingly, the remainder of this portion of the Second 702 Motion is denied without prejudice to renewal at trial, if appropriate.

b. *Qualifications*

Defendant objects that Dr. Talaber, a neuro-optometrist, is not qualified to rebut opinions offered by Dr. Thiagarajah, a neuro-ophthalmologist.  (ECF No. 52 at 7.) Explaining the differences in the providers' expertise, Defendant argues that because the rebuttal expert is "critical of the testing or conclusions reached by the affirmative expert, the rebuttal expert needs to have 'meaningful threshold of expertise' demonstrating the rebuttal expert's opinions are sufficiently reliable."  (*Id.*)  Here, Defendant asserts that Dr. Talaber does not meet this threshold because "her critiques arise from applications of standards in a field outside her area."  (*Id.*)  Plaintiff does not address Defendant's arguments concerning Dr. Talaber's qualifications.  (*See* ECF No. 60.)

The Court denies this portion of the Second 702 Motion.  Despite Plaintiff's silence, the Court finds that Dr. Talaber is qualified to rebut Dr. Thiagarajah's opinions. While Dr. Talaber is not a neuro-ophthalmologist, she practices in the same field— vision diagnosis and care—and can address Dr. Thiagarajah's opinions within the bounds set by Rule 702.  In the Court's view, Defendant's arguments go to the weight of her testimony, rather than its admissibility.

### 2. Ramya Shyam

Plaintiff retained Ms. Shyam, a speech language pathologist and cognitive rehabilitation therapist, to review the neuropsychological assessment of Plaintiff from Dr. Ed Cotageorge.  (ECF No. 52-2.)  Defendant challenges Ms. Shyam on two grounds: first, her rebuttal report is not truly rebuttal and instead offers new opinions, and second, as a speech therapist and cognitive rehabilitation therapist, she is not qualified to rebut the opinions of a neuro-psychologist.  (ECF No. 52.)

#### a. *Timeliness*

Defendant explains that Plaintiff did not endorse any expert in the field of speech therapy initially, though she did endorse an expert to address cognitive therapy: neuropsychologist, Dr. Young.  (ECF No. 52 at 4–5.)  Plaintiff last saw Dr. Young on May 19, 2020 and, at the time of her initial expert disclosures on May 15, 2023, she had not treated with a speech therapist or received cognitive therapy since May 2020.  (*Id.* at 5.)  Plaintiff only began treatment with Ms. Shyam on July 20, 2023, after Defendant's expert disclosure deadline passed; Ms. Shyam was disclosed as a rebuttal expert on July 14, 2023 to rebut the opinions of Dr. Cotageorge, who disputes that Plaintiff continues to suffer from a MTBI.  However, Plaintiff already endorsed experts addressing issues in Dr. Cotageorge's report, including Dr. Reinhard and Dr. Young.  Accordingly, Defendant asserts that even if Ms. Shyam's opinions were timely and even if she was qualified to offer them, her opinions would be cumulative.  (*Id.* at 5.)

In her response, Plaintiff identifies various portions of Ms. Shyam's report that address and disagree with Dr. Cotageorge's report.  (ECF No. 60 at 6–7.)  Some areas of dispute include whether Plaintiff suffered mild head trauma and whether she had diminished "executive functioning."  (*Id.*)

The Court denies this portion of the Second 702 Motion.  Although Plaintiff's chosen method of responding to Defendant's arguments—merely copying and pasting portions of expert reports without fully analyzing them—is not the most effective, the Court nonetheless agrees that Ms. Shyam's opinions rebut Dr. Cotageorge's opinions.  While Defendant tries to characterize Ms. Shyam as a speech therapist disclosing new opinions, Ms. Shyam's opinions are targeted to the cognitive issues raised and do not appear related (at least not to any great extent) to speech-therapy issues.  Therefore, the Court will permit Ms. Shyam to offer her opinions after Dr. Cotageorge testifies.

        b.    *Qualifications*

Defendant argues that Ms. Shyam is a speech language pathologist and cognitive rehabilitation therapist, and while she may be qualified to opine as to appropriate treatments or the job description of such professions, those issues are undisputed.  (ECF No. 52 at 8.)  Defendant lists numerous areas in which Ms. Shyam intends to testify, which the Court does not reiterate here, and contends that Ms. Shyam's testimony is outside her area of expertise.  (*Id.* at 8–9.)

Yet again, Plaintiff fails to address Defendant's arguments concerning Ms. Shyam's qualifications.  (ECF No. 60.)  Nevertheless, the Court concludes that as a cognitive rehabilitation therapist, Ms. Shyam is qualified to rebut Dr. Cotageorge's opinions.  While the Court considers this a close call, it ultimately concludes that Defendant's arguments go to the weight of Ms. Shyam's testimony, rather than its admissibility, and can be addressed on cross examination.  Therefore, the Court denies this portion of the Second 702 Motion.

        3.    <u>Dr. Michael Pramenko</u>

Plaintiff endorses Dr. Pramenko as a non-retained treating primary care provider.

(ECF No. 60 at 2.)  Dr. Pramenko opines, among other things, that Plaintiff has a mild traumatic brain injury ("MTBI") from the accident.

Defendant preliminarily notes that it does not challenge Dr. Pramenko's qualifications to opine on the primary care given to Plaintiff.  (ECF No. 52 at 10.)  However, Defendant challenges Dr. Pramenko's opinions regarding whether Plaintiff met the diagnostic criteria for MTBI, causation of MTBI, and cognitive sequala because he "is not an expert in these areas."  (*Id.* at 9.)  Specifically, Defendant emphasizes that Dr. Pramenko is not a neuropsychologist or neurologist, and he generally refers patients to other experts when he thinks they may have a MTBI.  (*Id.* at 9–10.)  For example, he referred Plaintiff to neuropsychologist Dr. Young, who Plaintiff endorsed to address the MTBI issues.  (*Id.* at 10.)  Accordingly, Defendant argues that Dr. Pramenko is not qualified to offer opinions concerning any MTBI and its sequala, and even if he were qualified, his testimony would be cumulative because Dr. Young will testify about Plaintiff's purported MTBI issue.  (*Id.*)  In its reply, Defendant clarifies that it will not object to Dr. Pramenko opining as to his treatment of Plaintiff, but objects to the extent he "seeks to opine about the nuances of neuropsychology that are outside his area of expertise as a treating primary care provider."  (ECF No. 63 at 5.)

In response, Plaintiff argues that because Dr. Pramenko is a "qualified hybrid witness,"[2] the Court should allow him to testify about his treatment of Plaintiff and "the

---

[2] Based on the briefing, it is the Court's understanding that Dr. Pramenko is a non-retained, treating physician who did not submit an expert report.  Plaintiff does not explain what she means by referring to Dr. Pramenko as a "qualified hybrid witness."  However, to the extent Plaintiff intends to elicit testimony from Dr. Pramenko that would only be appropriate from a retained expert who submitted an expert report, the Court will not permit such testimony at trial.  For instance, Dr. Pramenko is free to testify as to his treatment of Plaintiff, but he cannot offer causation opinions as a non-retained, treating physician.

reasons for recommending the MTBI treatment he ordered." (ECF No. 60 at 8.) Plaintiff argues that Dr. Pramenko is qualified to testify about his diagnosis and treatment of her for a MTBI. (*Id.*) Additionally, Plaintiff points out that Defendant deposed Dr. Pramenko and is thus not "unfairly surprised" that he will offer opinions about her MTBI. (*Id.*)

The Court grants this portion of the Second 702 Motion in part and denies it in part. As a non-retained treating physician, Dr. Pramenko is qualified to opine as to his treatment of Plaintiff, even with respect to her purported MTBI. Dr. Pramenko may testify about his diagnosis and treatment of Plaintiff. However, the Court agrees that Dr. Pramenko is not a neuropsychologist or neurologist, and therefore, he may not testify about the nuances of neuropsychology outside his expertise as a primary care physician. This ruling limits Dr. Pramenko's testimony, but it does not limit Plaintiff's case, as Plaintiff has retained the neuropsychologist Dr. Young to testify about such matters.

### C.   Cumulative Testimony

Given that Defendant identifies so many potential areas of cumulative testimony, the Court must caution Plaintiff against offering cumulative testimony at trial. For instance, it appears as though Dr. Talaber's testimony may be cumulative of Plaintiff's vision doctors' testimony, including Dr. Reddin, Dr. McKenzie, and Dr. Reeder. (ECF No. 52 at 4.) Ms. Shyam's testimony may be cumulative of Dr. Reinhard and Dr. Young's testimony. (*Id.* at 5.) And Dr. Pramenko's testimony may be cumulative of Dr. Young's testimony. (*Id.* at 10.)

In her response, Plaintiff did not address Defendant's suggestions that at least three of her experts' testimony may be cumulative. (ECF No. 60.) Should she attempt to offer cumulative testimony at trial, the Court will be quick to sustain Defendant's

17

objections to such efforts.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. The Blattenberg Motion (ECF No. 51) is GRANTED IN PART and DENIED IN PART, as set forth above; and

2. The Second 702 Motion (ECF No. 52) is GRANTED IN PART and DENIED IN PART, as set forth above.

Dated this 10th day of June, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge